**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

IN RE:

Rodney Richard Richburg, Sr.,

Debtor.

C/A No. 25-01297-EG

Chapter 13

**ORDER REGARDING MOTION OF**
**ITRIA VENTURES, LLC TO LIFT**
**AUTOMATIC STAY**

**THIS MATTER** is before the Court on the Motion for Relief from Automatic Stay ("Motion") filed by Itria Ventures, LLC ("Creditor" or "Itria Ventures").[1] Rodney Richard Richburg, Sr. ("Debtor") filed a response in opposition to the Motion (the "Objection").[2] Subsequently, Creditor filed a Supplemental Memorandum in Support of the Motion.[3] At the Court's request, the parties also filed a joint statement of dispute on June 18, 2026.[4] A hearing was held on the Motion, which was attended by Debtor, Debtor's Counsel, and Creditor's Counsel.[5]

A confirmed bankruptcy plan carries significant force: it binds creditors, establishes the debtor's obligations, and provides the foundation for a financial fresh start. But the power of confirmation has limits. It does not automatically rewrite every property interest connected to the debtor, nor does it necessarily extend bankruptcy protections to assets owned by separate legal entities, such as a limited liability company ("LLC"). This case requires the Court to examine

---

[1] ECF No. 101, filed May 26, 2026.
[2] ECF No. 102, filed May 27, 2026.
[3] ECF No. 107, filed June 17, 2026.
[4] ECF No. 109.
[5] At the hearing, Creditor offered into evidence, as Exhibit A, a copy of the "Title to Real Estate (Quit Claim Deed)" dated September 11, 2023, from Santee Lynches Regional Development Corporation, as Grantor, to UBI Southeast Properties LLC, as Grantee, conveying various properties located in Sumter, South Carolina, including property located at 19 Dunway Drive. Creditor also offered into evidence, as Exhibit B, a copy of the Order of Default Judgment entered by the State Court on April 4, 2024, granting judgment by default against the UBI LLCs (as defined below), Debtor, and Pamela Marie Tisdale-Richburg in the amount of $110,727.08.

1

these limits.  Approximately three months after Debtor's chapter 13 plan was confirmed, Creditor moved for relief from the automatic stay under 11 U.S.C. § 362(d)(2) to enforce its prepetition judgment lien against a piece of property titled in the name of UBI Southeast Properties LLC—a company owned by Debtor.  The Court has been asked to determine (i) whether Debtor's confirmed chapter 13 plan affected Creditor's judicial lien against UBI Southeast Properties LLC, despite the chapter 13 plan not making any specific reference to it and only mentioning a secured lien against UBI Southeast LLC, a separate entity that Debtor also owns, and (ii) whether the automatic stay now prohibits enforcement of its lien against property titled in the name of UBI Southeast Properties LLC.

After considering the record before it and the documents introduced into evidence, applicable law, and the arguments of the parties raised in the pleadings and at the hearing, the Court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

On May 16, 2023, Creditor entered into a Receivables Sale Agreement with UBI Southeast LLC and UBI Southeast Properties LLC—two separate entities (collectively, the "UBI LLCs"). UBI Southeast Properties LLC is a limited liability company owned by Debtor.[6]  UBI Southeast Properties LLC is the title owner of several properties, including property at 19 Dunway Drive,

---

[6] Debtor's Amended Schedule A/B filed September 16, 2025 (ECF No. 72), listed a 100% ownership interest in UBI Southeast Properties LLC, described as "[a] Real Estate company or Real Estate Holding Company" with a value of $0.00.  The record before the Court is not entirely clear, however, whether Debtor is the sole owner of the interest of the UBI LLCs or shares his interest with Pamela Marie Tisdale-Richburg.  In fact, the schedules that Debtor's spouse filed in her case after their joint chapter 13 case was separated, indicate that she holds a 50% interest in UBI Southeast Properties LLC.  C/A No. 25-03529, ECF No. 70, filed Sept. 24, 2026.  To add to the confusion, neither Debtor nor his spouse list ownership of UBI Southeast LLC on Schedule A/B.  However, on Part 11, Item 27 in their respective Statement of Financial Affairs, which requires debtors to list ownership in a business in the last four years, Debtor and his spouse only list UBI Southeast LLC—not UBI Southeast Properties LLC.  ECF No. 1; C/A No. 25-03529, ECF No. 70.  At the hearing and in pleadings filed with the Court, however, Debtor appears to take the position that he is the sole owner of UBI Southeast Properties LLC.

2

Sumter, South Carolina 29150 (the "Property").[7]  To secure the obligations of the UBI LLCs,

Debtor executed and delivered a personal guaranty on May 16, 2023.  Due to an alleged breach of

the Receivables Sale Agreement, Creditor initiated legal proceedings against the UBI LLCs,

Debtor, as guarantor, and Pamela Marie Tisdale-Richburg in the Sumter County Court of Common

Pleas (the "State Court"), Case Number 2023-CP-43-01866.  On April 4, 2024, the State Court

entered an Order of Default Judgment in favor of Creditor against the UBI LLCs, Debtor, and

Pamela Marie Tisdale-Richburg in the amount of $110,727.08 (the "Judgment").[8]  Upon its entry

in the Judgment Index, the Judgment attached to the Property owned by UBI Southeast Properties,

LLC.

On April 6, 2025, Debtor and Pamela Marie Tisdale-Richburg jointly filed a voluntary

petition for relief under chapter 13 of the Bankruptcy Code.  Debtor subsequently filed a Motion

to Divide Chapter 13 Case on August 18, 2025, and an Order Dividing Joint Case was entered on

September 8, 2025, providing that Debtor would remain the debtor in case number 25-01297-eg,

and Pamela Marie Tisdale-Richburg's chapter 13 was assigned case number 25-03529-eg.[9]

On Schedule A/B in both Debtor's initial[10] and amended Schedules,[11] he listed the Property

as being "Owned by UBI SOUTHEAST PROPERTIES LLC" and having a value of $9,770.00.[12]

Debtor also listed a checking account on Schedule A/B identified as "The Citizens Bank X3857

(note balance assumes proceeds paid from Lincoln Heritage under Lien UCC of UBI Southeast

LLC EIN 900687134)" with a value of $16,190.00 as of the Petition Date (the "Checking

---

[7] Creditor's Ex. A, Quit Claim Deed from Santee Lynches Regional Development Corporation to UBI Southeast
Properties LLC, dated September 11, 2023.
[8] Creditor's Ex. B, Order of Default Judgment.
[9] ECF No. 66.
[10] ECF No. 1, filed Apr. 6, 2025.
[11] ECF No. 72, filed Sept. 16, 2025.
[12] *See supra* note 6.  Notably, Mrs. Tisdale-Richburg did not list the Property on her amended Schedule A/B.  C/A
No. 25-03529-eg, ECF. 70.

Account").[13]   Debtor did not claim an exemption in the Property or the Checking Account on

Schedule C.   In Schedule D, Debtor listed Itria Ventures as a secured creditor with a claim of

$104,336.83, indicating that the claim was secured by "RE and cash accounts, receivables under

lien UCC of UBI Southeast LLC EIN 900687134" in the amount of $16,190.00.   Itria Ventures

did not file a proof of claim in either Debtor's or his spouse's bankruptcy cases.

After Debtor filed nine versions of a proposed chapter 13 plan over a ten-month period, on

February 5, 2026, the Court confirmed Debtor's chapter 13 plan (the "Confirmed Plan")[14] filed on

December 11, 2025[15] together with the Chapter 13 Plan Payment Change Stipulation filed on

February 3, 2026.[16]   None of the plans described the collateral securing Creditor's claim as the real

estate titled in the name of UBI Southeast Properties LLC.   Creditor did not object to the Confirmed

Plan nor any of its prior versions.   Debtor's prior plan iterations inconsistently treated Creditor's

secured claim, resulting in additional ambiguity and confusion as to Debtor's intended approach

toward Creditor's Judgment:

(1) In the plan filed on April 6, 2025 (ECF No. 3), in Section 3.2, Debtor proposed to value Creditor's claim of $104,366.83 at $0.00 and noted that Creditors' claim was secured by the following collateral: "Checking: The Citizens Bank X3857 (note balance assumes proceeds paid from Lincoln Heritage under lien UCC of UBI Southeast LLC EIN 900687134.)"  Notably, the value of the collateral was listed as $16,190.00 (corresponding to the value of the Checking Account) plus $569,800.00, corresponding to the value of his primary residence listed in Debtor's Schedules—not the Property titled in the name of UBI Southeast Properties LLC.

(2) In the plans filed on June 15, 2025 (ECF No. 19), August 3, 2025 (ECF No. 41), August 5, 2025 (ECF No. 43), August 7, 2025 (ECF No. 50), and September 10, 2025 (ECF No. 67), in Section 3.2, Debtor proposed to value Creditor's secured claim at $0.00 and noted that Creditor's claim was secured by "RE and cash accounts, receivables under lien UCC of UBI Southeast LLC EIN 900687134" with a value of $16,190.00 (corresponding to the value of the Checking Account).

---

[13] Although the same bank account was listed in Mrs. Tisdale-Richburg's amended Schedule A/B, the value was listed as $0.00.  C/A No. 25-03529-eg, ECF. 70.
[14] ECF No. 96.
[15] ECF No. 85.
[16] ECF No. 93.

(3) In the plan filed on October 26, 2025 (ECF No. 77), Debtor, for the first time, proposed to treat Creditor in Section 3.4 and for the entire amount of $104,366.00 to be avoided as a result of senior liens on the collateral securing Creditor's claim described as "RE and cash accounts, receivables under lien UCC of UBI Southeast LLC EIN 900687134" totaling $850,000.00+ and noting an applicable exemption of $76,125.00. Notably, the value of Debtor's interest in property is listed as "$437,500.00 (debtor's ½ interest)," although it is not clear to what the amount corresponds.

Section 3.4 of the Confirmed Plan[17] provides for the avoidance of Creditor's lien secured

by "RE and cash accounts receivables under lien UCC of **UBI Southeast LLC**" (emphasis added).

More specifically, it provides:

The Debtor(s) state that the judicial liens or nonpossessory, nonpurchase money security interests securing the claims listed below *impair exemptions to which the debtor would have been entitled under 11 U.S.C. § 522(b).* Unless otherwise ordered by the Court, a judicial lien or security interest securing a claim listed below will be avoided *to the extent that it impairs such exemptions* upon entry of an order, whether included in the order confirming the plan or otherwise avoiding liens or security interests. The amount of the judicial lien or security interest that is avoided will be treated as an unsecured claim in Part 5.1 to the extent allowed. The amount, if any, of the judicial lien or security interest that is not avoided will be paid as a secured claim under the plan.

| | |
|---|---|
| Name of creditor and description of property securing lien | Itria Ventures RE and cash accounts, receivables under lien UCC of UBI Southeast LLC EIN 90068713 |
| Estimated amount of lien | $104,366.83 |
| Total of all senior/unavoidable liens | $0.00 |
| Applicable Exemption and Code Section | $0.00 None |
| Value of debtor's interest in property | $16,190.00 |
| Amount of lien not avoided (to be paid in 3.2 above) | None or $0.00 |
| Amount of lien avoided | $16,190.00 |

Neither UBI Southeast Properties LLC nor the Property is expressly identified in the Confirmed

Plan as securing Creditor's lien or otherwise addressed.

---

[17] The eighth version of the proposed chapter 13 plan provided the same treatment of Creditor's claim as proposed in the Confirmed Plan. ECF No. 79.

In the Motion, Creditor requests that, to the extent the automatic stay applies as to the Property, relief from such stay be granted pursuant to 11 U.S.C. § 362(d)(2) to allow Creditor to pursue collection of its Judgment against the Property on the grounds that (1) Debtor does not have equity in the Property because it is titled in the name of a non-debtor limited liability company, and the Judgment exceeds the value of the Property as reflected in Debtor's Schedules, and (2) the Property is not necessary for a successful reorganization.  Creditor further contends that the Confirmed Plan did not avoid or otherwise affect its judicial lien because it referenced a separate UCC lien against a separate and distinct LLC, albeit owned by Debtor.  On the other end, Debtor argues that (a) he is the sole owner of UBI Southeast Properties LLC; therefore, the LLC is property of the estate and, in turn, the LLC's property is protected by the automatic stay; (b) the terms of the Confirmed Plan are binding under 11 U.S.C. § 1327, thus precluding Creditor from seeking to collect on its Judgment in State Court a few months after the plan was confirmed and became binding on creditors; and (c) Debtor has a right of redemption under S.C. Code Ann. § 33-44-504, which in itself is a property interest pursuant to 11 U.S.C. § 541(a).

**ANALYSIS AND CONCLUSIONS OF LAW**

The questions presented to the Court can be distilled into the following: (1) is the Property, titled in the name of Debtor's LLC protected by the automatic stay that went into effect in Debtor's bankruptcy case; (2) do Debtor's rights under S.C. Code Ann. § 33-44-504 trigger the automatic stay or limit Creditor's ability to collect only from Debtor's distributional interest in that LLC; and (3) is Creditor precluded from enforcing its Judgment against the Property as a result of the binding effect of the Confirmed Plan?  As discussed above, the analysis is complicated by Debtor's ambiguous treatment of Creditor's Judgment in the Confirmed Plan and the inconsistencies in how that Judgment is addressed with respect to UBI Southeast Properties LLC.

I. **The Automatic Stay Does Not Apply to Property Titled in the Name of UBI Southeast Properties LLC.**

When a debtor files a bankruptcy petition, an automatic stay immediately takes effect, prohibiting creditors from attempting to collect on prepetition debts outside the bankruptcy forum. The stay serves to protect the debtor's estate and provides a systematic, equitable liquidation procedure for all creditors. With limited exceptions, 11 U.S.C. § 362(a) provides for a stay of, among other things:

> (2) the enforcement, *against the debtor or against property of the estate*, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of *property of the estate or of property from the estate* or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against *property of the estate*;
> (5) any act to create, perfect, or enforce against *property of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;. . . .

11 U.S.C. § 362(a) (emphasis added). The automatic stay, however, "does not stay actions against property that is not property of the estate." *In re Brittain,* 435 B.R. 318, 321 (Bankr. D.S.C. 2010) (citing *In re Moore,* 410 B.R. 439, 441 (Bankr. E.D. Va. 2009)). According to 11 U.S.C. § 541(a), "property of the estate" includes "all legal or equitable interest of the debtor in property as of the commencement of the case."

Debtor posits that because he is the sole owner of UBI Southeast Properties LLC, the LLC is effectively his "virtual alter ego," such that Debtor's property and the LLC are one and the same. While a debtor's membership interest in an LLC may constitute property of the estate, the assets owned by the LLC do not automatically become property of the debtor's bankruptcy estate. Under South Carolina law, the members of an LLC have no property interest in assets titled in the name of the LLC. S.C. Code Ann. § 33-44-501(a) ("A member is not a co-owner of, and has no

7

transferable interest in, property of a limited liability company."); *see also* S.C. Code Ann. § 33-44-501 cmt. ("Members have no property interest in property owned by a limited liability company."); *Brittain,* 435 B.R. at 322 (citing *Moore,* 410 B.R. at 442) ("[A]lthough the debtor's interest in a corporation becomes property of the estate when a bankruptcy petition is filed, the corporation's property does not thereby become property of the shareholder's estate."); *see also In re Jones,* 628 B.R. 819, 823 (Bankr. D.S.C. 2021); *In re Ollis,* No. 18-04549-HB, 2019 WL 244378 (Bankr. D.S.C. Jan. 16, 2019).  Indeed, the Court previously addressed this very issue in an opinion issued in an adversary proceeding brought by Debtor against another creditor, where the Court reached the same conclusion.  *See Richburg v. Glyndon Square LLC (In re Richburg),* 671 B.R. 918, 920 n. 4 (Bankr. D.S.C. 2025).[18] ("The Court notes that while Debtor's membership interests in the LLC are clearly property of Debtor's bankruptcy estate under 11 U.S.C. § 541(a) and are therefore covered by the automatic stay, the same cannot be said for the assets of the LLC.").  Despite Debtor's renewed arguments, the Court's view remains unchanged—Debtor's ownership interest in UBI Southeast Properties, LLC does not make Debtor the legal owner of UBI Southeast Properties LLC's assets.

Debtor elected to create an LLC for the purpose of holding title to the Property.  "Having assumed whatever benefits flowed from that decision, it cannot now ignore the existence of the LLC in order to escape its disadvantages." *Kreisler v. Goldberg,* 478 F.3d 209, 214 (4th Cir. 2007) (citing *Terry v. Yancey,* 344 F.2d 789 (4th Cir. 1965)).  Despite factual differences, *Kreisler* provides applicable analytical guidance for the case at hand.  The case involved the consolidated bankruptcy estates of Mr. Kreisler and Bask Holdings, LLC ("Bask").  Bask's wholly owned subsidiary, Just Holdings, LLC ("Just"), was a party to a ground rent lease on a property titled in

---

[18] Adv. Pro. No. 25-80037-eg, ECF No. 15, entered Aug. 27, 2025.

Just's name.  The creditor that owned the ground rent initiated a state court action for the rent it claimed was owed on the property.  In affirming the lower courts' denial of the debtors' motion for imposition of sanctions against the creditor for the alleged stay violation in pursuing the ejectment action, the Fourth Circuit Court of Appeals concluded that the automatic stay did not apply to actions against a debtor's non-bankruptcy subsidiary corporation and that the debtor's interest in the subsidiary did not, in turn, extend to the subsidiary's assets:

> Kreisler argues that Bask's interest in Just represents property of the bankruptcy estate.  As the district court recognized, Bask does have an interest in Just and this interest in the subsidiary corporation does form part of Kreisler's bankruptcy estate.  The fact that a parent corporation has an ownership interest in a subsidiary, however, does not give the parent any direct interest in the *assets* of the subsidiary.  Although Bask could have established an ownership interest in the property, it chose not to do so.  Instead, it created an LLC for the purpose of holding title to the property.  The district court therefore correctly distinguished between Bask's interest in Just and Just's direct interest in the property known as 1741 Bond St., Baltimore, Maryland.  The assets of Just belonged to Just and did not form part of Bask's bankruptcy estate.  Consequently, an action to obtain possession or exercise control over Just's property was not an action to obtain possession or exercise control over property of Kreisler's bankruptcy estate.

478 F.3d at 214.  The debtor in *Kreisler* further argued that even if the property was not deemed part of the bankruptcy estate, the automatic stay would nonetheless apply to the state court action because Just's loss of the property through ejectment would cause Bask's interest in Just to lose value.  The Fourth Circuit was similarly unpersuaded by that argument:

> The fact that Bask's interest in Just may lose value, however, is not dispositive.  The nature and extent of Bask's interest in Just remains unchanged by Just's loss of the property.  For this reason, courts faced with similar situations have held that an automatic stay does not prevent a non-debtor company from taking an action that might affect the value of a debtor's stock . . .
>
> In contrast, courts have held that an action against a third party is barred by §362(a)(3) when a judgment against the third party would effectively operate to foreclose on property of the bankruptcy estate, depriving a debtor of an interest in property, rather than merely affecting an asset's value. . . . *In re Bialac,* 712 F.2d 426, 431–32 (9th Cir.1983) (holding that the automatic stay prohibited a creditor from foreclosing on property in which a debtor had a right of redemption, even

9

though non-bankrupt third parties owned the property).[19]   Accordingly, because Just's loss of the property affected only the *value* of Bask's interests, we agree with the district court that § 362(a)(3) does not apply to the ejectment action against Just.

*Id.* at 214-215.  The same principle applies here.  Although Debtor's membership interest in UBI Southeast Properties LLC may constitute property of the estate under 11 U.S.C. § 541(a)(1), the real property owned by the LLC does not become estate property merely because Debtor is the sole member.  The relief that Creditor is seeking is to pursue its Judgment against UBI Southeast Properties LLC—not Debtor—and the Property—not Debtor's distributional interests in Debtor's LLC.

Debtor's arguments at the hearing as to why real estate titled in UBI Southeast Properties LLC's name should be considered property of the estate protected by the automatic stay were unconvincing.  Similarly, the cases that Debtor cites in the Objection and in the Joint Statement of Dispute in support of his argument that the stay applies to the LLC are inapposite—merely addressing the trustee's succession to rights associated with the membership interest—and provide no support for his position. *See In re Albright*, 291 B.R. 538 (Bankr. D. Colo. 2003) (holding that upon filing a chapter 7 petition, a debtor who was the sole member of an LLC effectively assigned her entire membership interest in the LLC to chapter 7 estate and trustee obtained all of her rights, including right to control management of the LLC); *In re A-Z Electronics, LLC*, 350 B.R. 886 (Bankr. D. Idaho 2006) (holding that a chapter 7 debtor who was the sole member of an LLC lost authority to file chapter 11 bankruptcy petition for the LLC upon the filing of his chapter 7 petition and the chapter 7 trustee was the only one entitled to manage the LLC and decide whether to file a bankruptcy petition on its behalf); *Fursman v. Ulrich (In re First Prot., Inc.),* 440 B.R. 821

---

[19] *Bialac* dealt with a debtor's right to redeem collateral after a state court judgment granted the creditor a security interest in a note.  This case appears more in line with the cases dealing with the redemption rights of creditors pursuant to UCC 9-623, which are discussed further below.

(B.A.P. 9th Cir. 2010) (holding that upon commencement of bankruptcy case by members of an LLC, the trustee stepped into debtors' shoes and succeeded to all of debtors' rights in LLC, including right to control the LLC, and was not just a mere assignee of right to receive income); *In re Modanlo*, 412 B.R. 715 (Bankr. D. Del. 2009) (finding a chapter 11 trustee of LLC's sole member acquired both the economic and governance rights to participate in the management of LLC upon appointment); *Gharib v. Casey (In re Kenny G. Enters., LLC),* 692 F. Appx. 950 (9th Cir. 2017) (holding that bankruptcy court acted within its civil contempt authority in imposing sanction on party in possession of estate funds in amount of funds which he failed to turn over after debtor's chapter 11 case was converted to one under chapter 7).

Because Debtor does not have a legal property interest in UBI Southeast Properties LLC's assets, including the Property, the automatic stay arising as a result of Debtor's bankruptcy petition does not apply to the Property at issue. *Kreisler,* 478 F.3d at 213-14 (holding that the automatic stay did not apply to actions against the debtor's wholly owned non-bankruptcy subsidiary corporation and debtor's interest in the subsidiary did not extend to the subsidiary's assets.); *Jones,* 628 B.R. at 824 (finding that "the automatic stay created by an individual filing for chapter 13 relief does not extend to an LLC in which the individual debtor has an interest."); *see also In re McCormick*, 381 B.R. 594 (Bankr. S.D.N.Y. 2008) (rejecting the debtor's argument that the automatic stay should be extended to his LLC under the theory that ownership of the LLC constitutes property of the estate).

II.   ***Any Right of Redemption that Debtor May Have Under S.C. Code Ann. § 33-44-504(c) Does Not Trigger the Protections of the Automatic Stay in this Case Nor Does It Limit Creditor to Recover Solely from Debtor's Distributional Interest.***

In the Objection, Debtor asserts that § 33-44-504 gives Debtor a right of redemption which is a property interest recognized by 11 U.S.C. § 541. Debtor further takes the position that

11

Creditor's "ability or capacity to collect on its judgment is limited to the distributional interest of the specific judgment debtor." These arguments, however, are unavailing for the reasons set forth below.

Notably, the Joint Statement of Dispute provides that "[b]y entering into or filing this statement, the parties shall be limited to and bound by the positions provided herein." At the outset, the Court notes that any argument related to Debtor's redemption rights has been abandoned by Debtor as it was merely mentioned in passing in the Objection but was not raised as an issue in the Joint Statement of Dispute nor argued at the hearing.

Even assuming Debtor had not waived that argument, the Court is not convinced that it warrants a different outcome. South Carolina Code § 33-44-504 governs a creditor's rights to satisfy a judgment from a member's LLC interest through a charging order. Section 33-44-504(c) provides:

(a) On application by a judgment creditor of a member of a limited liability company or of a member's transferee, a court having jurisdiction may charge the distributional interest of the judgment debtor to satisfy the judgment. The court may appoint a receiver of the share of the distributions due or to become due to the judgment debtor and make all other orders, directions, accounts, and inquiries the judgment debtor might have made or which the circumstances may require to give effect to the charging order.

(b) A charging order constitutes a lien on the judgment debtor's distributional interest. The court may order a foreclosure of a lien on a distributional interest subject to the charging order at any time. A purchaser at the foreclosure sale has the rights of a transferee.

(c) At any time before foreclosure, a distributional interest in a limited liability company which is charged may be redeemed:

(1) by the judgment debtor;
(2) with property other than the company's property, by one or more of the other members; or
(3) with the company's property, but only if permitted by the operating agreement.[20]

---

[20] No operating agreement was introduced into evidence.

(d) This chapter does not affect a member's right under exemption laws with respect to the member's distributional interest in a limited liability company.

This section provides the exclusive remedy by which a judgment creditor of a member or a transferee may satisfy a judgment out of the judgment debtor's distributional interest in a limited liability company.

Debtor's argument that South Carolina's charging statute limits Creditor solely to Debtor's "distributional interest" fails for several reasons.  First, the Court takes judicial notice that the Complaint filed in the State Court action was based on a claim against the UBI LLCs based on their default on the Receivables Sale Agreement, and against Debtor and his wife based on their guaranty.  The Judgment entered in the State Court contains no express provision charging Debtor's distributional interest in either UBI LLCs.  Rather, the Order of Default Judgment simply grants a judgment against all defendants in the amount of $110,727.08, and the record before the Court does not indicate that there was a subsequent proceeding to charge Debtor's distributional interests in the UBI LLCs.

Second, even if the Judgment Order granted a charging lien, which it does not appear to do, S.C. Code Ann. § 33-44-504(c) strictly applies to the redemption of a "a distributional interest in a limited liability company *which is charged.*"  S.C. Code Ann. § 33-44-504(c) (emphasis added).  Unlike the redemption rights of a guarantor to collateral pursuant to UCC 9-623, this right permits redemption of the charged interest itself—the membership interest—not the redemption of underlying LLC real property.  Said differently, the statute's plain language does not grant a judgment debtor any right to redeem specific assets owned by the LLC.[21]  Moreover, nothing in

---

[21] This is distinguishable from the redemption interests recognized by the United States Court of Appeals for the Fourth Circuit in *In re Moffett*, 356 F.3d 518 (4th Cir. 2004).  In *Moffett*, the Fourth Circuit recognized that a debtor's right of redemption as obligor under UCC § 9-623 is an equitable interest sufficient to trigger the protection of the automatic stay and a right to turnover of possession of the collateral back to the debtor from the secured creditor.  *See In re Brittain*, 435 B.R. at 325; *In re Keisler*, No. 17–03304–dd, 2017 WL 4685000 (Bankr. D.S.C. Oct. 16, 2017) (relying on S.C. Code § 36-9-623 which expressly provides a guarantor—such as Debtor in this case—the right to redeem the underlying collateral, even if it is titled in the name of an LLC).  Thus, a debtor's redemption rights

13

the statute limits Creditor solely to Debtor's "distributional interest" as Debtor suggests.  Here, Creditor possesses a direct Judgment not only against Debtor and his spouse individually, but also separately against UBI Southeast Property LLC.  In this instance, Creditor is not seeking to satisfy the Judgment it obtained from the State Court out of Debtor's distributional interest; it is seeking to enforce the Judgment against the Property that UBI Southeast Properties LLC owns—itself a judgment debtor that is not in bankruptcy.

Lastly, even if Debtor had a redemption right in his distributional interest which he could exercise, he did not effectively do so.  In the context of a debtor's right to redeem collateral under § 9-623 of the UCC, the Court has previously recognized that a debtor, as guarantor, may assert a right of redemption as property of the estate, seek turnover to obtain personal possession of the collateral, and may provide for the exercise of the right of redemption through a chapter 13 plan. *See Brittain,* 435 B.R. at 325.  The Court noted, however, that a debtor must assert these redemptive rights in the schedules or statement of financial affairs and must properly exercise the redemptive rights through the plan. *Id.* at 326 (citing *In re Moffett,* 356 F.3d 518 (4th Cir. 2004)). Debtor did not assert his redemptive rights in any document prior to filing the Objection to the Motion and, as addressed in more detail below, the Confirmed Plan does not clearly address how Creditor's Judgment against UBI Southeast Properties LLC, secured by property titled in the LLC's name, is treated under or in any way affected by the Confirmed Plan.

Lastly, the Motion does not seek authority for Creditor to levy against Debtor's membership interest in UBI Southeast Properties LLC.  It seeks relief from the stay—to the extent necessary—to proceed against the Property titled in the name of UBI Southeast Properties LLC.

---

pursuant to UCC § 9-623 which deals with the redemption by the guarantor or secondary obligor of the underlying collateral itself, is distinguishable from the redemption rights granted by S.C. Code Ann. § 33-44-504(c), which extend to the distributional interest in the LLC—not the underlying assets of the company.

14

Creditor has both a judgment against Debtor and a judgment against UBI Southeast Properties LLC and, through the Motion, is seeking relief to enforce its direct Judgment against UBI Southeast Properties LLC—not a debtor in bankruptcy.  Accordingly, Creditor is not limited solely to Debtor's distributional interest in the LLC and may pursue enforcement of its direct Judgment against the Property titled in UBI Southeast Properties LLC's name.

### III.    Res Judicata *Does Not Preclude Creditor from Enforcing the Judgment in State Court.*

Debtor asserts that the Confirmed Plan makes the Creditor's treatment therein *res judicata* and Creditor's lien was "avoided in every iteration of Debtor's plan."  In so doing, Debtor relies on 11 U.S.C. § 1327, which provides:

(a) The provisions of a confirmed plan *bind the debtor and each creditor*, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests *all of the property of the estate* in the debtor.
(c) Except as otherwise provided in the plan or in the order confirming the plan, *the property vesting in the debtor* under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327 (emphasis added).  Debtor's argument is not only unsupported by the record, but also contrary to bankruptcy law.

From the outset, the Court notes that the binding effect of the confirmation order establishes the rights of a debtor and creditors as those that are provided in the plan.[22]  Confirmation of a plan, however, would not vest property that is not property of the estate in the debtor; thus, property such as the assets owed by a debtor's LLC would not vest in the debtor free and clear of a creditor's claim.  *Cf. In re Cullum*, C/A No. 18-05723-hb, slip op. at 2 (Bankr. D.S.C. May 4, 2019) (holding

---

[22] The term "creditor" is defined in 11 U.S.C. § 101(10) as "an entity that has a claim *against the debtor* that arose at the time of or before the order for relief concerning the debtor."  Here, Creditor has a right to payment not only against Debtor but also UBI Southeast Properties LLC.

that the confirmation of a plan that proposed to pay the mortgage secured by property owned by a third party did not change the fact that debtor did not own the property and there was no longer a mortgage to pay because the property was sold at a prepetition foreclosure sale).

The only provision of the Confirmed Plan specifically referencing Creditor indicates that Debtor seeks avoidance of its lien secured by "RE and cash accounts, receivables under lien UCC *of UBI Southeast LLC*."   The Confirmed Plan nowhere references "UBI Southeast Properties LLC" or Creditor's judicial lien on the Property at issue.  Debtor also did not claim an exemption for the Property titled in UBI Southeast Properties LLC's name.  Interestingly, the value of Debtor's interest in collateral referenced in the lien avoidance provision of the Confirmed Plan— $16,190.00—is the value listed in Debtor's Schedules for the Checking Account of UBI Southeast LLC.  Thus, there is nothing in the Confirmed Plan that would suggest that Debtor was attempting to modify or bind Creditor with respect to the Judgment against UBI Southeast Properties LLC.  Creditor's Motion concerns a judicial lien arising from a State Court Judgment entered against UBI Southeast Properties LLC, which lien attached to real property owned by that entity.  The Confirmed Plan language addressing a "UCC lien" against UBI Southeast LLC neither refers to nor adjudicates Creditor's separate judicial rights against UBI Southeast Properties LLC.[23]

Generally, "liens pass through bankruptcy unaffected."  *Cen-Pen Corp. v. Hanson,* 58 F.3d 89, 92 (4th Cir. 1995); *see also Spann v. Vanderbilt Mortg. and Fin., Inc.*, No. 2:25-cv-06539, 2025 WL 3949809 (D.S.C. Nov. 19, 2025) ("Courts of the Fourth Circuit "have long followed the principle that *in rem* claims survive the bankruptcy discharge, while in personam claims are

---

[23] The binding effect of a chapter 13 confirmation order establishes the rights of the debtor and creditors as those that are provided in the plan.  Accordingly, it is undisputed that creditors who receive notice of the chapter 13 case bear the responsibility of reviewing the proposed plan and filing any objections if they believe the plan contains improper provisions.  However, as Collier on Bankruptcy has noted "if the plan is ambiguous, the court may still have to resolve disputes as to the rights of the parties, and in such cases the plan may be construed against the debtor, the party who drafted it."  8 COLLIER ON BANKRUPTCY ¶ 1327.02 (16th 2026).  Therefore, any ambiguity in the Confirmed Plan must be construed against Debtor.

extinguished. . . . Ultimately, unless a security interest or lien is avoided, a discharge has little, if any, impact on a creditor's ability to proceed in rem against the property securing the claim.") (internal citations omitted). "[F]or a plan to vest property in the debtor free and clear of any liens, § 1327(c) provides that the plan must 'provide for' the lien." *In re Durham,* 260 B.R. 383, 388 (Bankr. D.S.C. 2001). The Fourth Circuit stated in *Cen-Pen* that "a plan 'provides for' a claim or interest when it acknowledges the claim or interest and makes explicit provision for its treatment." *Cen-Pen,* 58 F.3d at 94. Therefore, a debtor must take affirmative action to challenge or avoid a lien against his property to prevent the property from remaining subject to the lien following bankruptcy. *Id.*

Here, Debtor did not take the necessary steps. The Confirmed Plan does not specifically address or acknowledge Creditor's lien on the Property or any assets of UBI Southeast Properties LLC or otherwise give notice to Creditor that its lien on the Property was being avoided. "If a Chapter 13 plan does not address a creditor's lien (for instance, by expressly providing for payment of an allowed secured claim and cancellation of the lien), that lien passes through the bankruptcy process intact, absent the initiation of an adversary proceeding." *Id.* at 94. Any ambiguity created by the Confirmed Plan shall also be construed against its drafter—i.e., Debtor.

Moreover, the Confirmed Plan seeks to avoid Creditor's lien in the amount corresponding to the value of the Checking Account—$16,190.00—pursuant to 11 U.S.C. § 522(f), which provides that "a debtor may avoid the fixing of a lien on *an interest of the debtor* in property to the extent that such lien impairs an exemption to which the debtor *would have been entitled.*" 11 U.S.C. § 522(f) (emphasis added). As discussed above, the Property is not property of Debtor's estate and thus Debtor would not be entitled to claim an exemption for such property. *See* 11 U.S.C. § 522(b)(1) (providing that "an individual debtor may exempt *from property of the estate* the

17

property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.")  For

these reasons, the Court finds that § 1327 does not preclude Creditor from enforcing its lien rights

in the Property.

**CONCLUSION**

For the foregoing reasons, the Court finds that the automatic stay provisions of 11 U.S.C.

§ 362 do not apply to the Property as it is not property of Debtor's bankruptcy estate.[24]  Moreover,

because the Debtor's Confirmed Plan did not avoid Creditor's judicial lien against property of UBI

Southeast Properties LLC, the Confirmed Plan has no *res judicata* effect as to Creditor's Judgment

against the LLC and Creditor is not prohibited from enforcing its judgment lien against the

Property.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**07/13/2026**



Entered: 07/13/2026

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

---

[24] Even assuming arguendo that some aspect of the automatic stay applies to Creditor's enforcement efforts, the Court finds that cause exists under 11 U.S.C. § 362(d)(2).  That provision requires the Court to grant relief if Debtor does not have equity in the Property and the Property is not necessary for an effective reorganization.  Here, Debtor has no equity in the Property.  It is undisputed that the Property's value is less than $10,000.00—substantially less than Creditor's judgment lien.  Additionally, Debtor has not advanced any convincing argument that the Property—titled in the name of a non-debtor LLC—is necessary to an effective reorganization.  See 11 U.S.C. § 362(g).